## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## COURT FILE NO.:

| | |
|---|---|
| David Olson,<br><br>          Plaintiff,<br><br>v.<br><br>Midfield Concession Enterprises, Inc. and SSP America Inc.,<br><br>          Defendants. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, David Olson ("Plaintiff"), makes the following allegations and claims against Defendants Midfield Concession Enterprises, Inc. ("Defendant Midfield") and SSP America Inc. ("Defendant SSP") (collectively "Defendants"), upon personal knowledge, investigation of his counsel, and on information and belief.

## INTRODUCTION

1. This action seeks redress for Defendants' Invasion of Privacy - Intrusion Upon Seclusion and Intentional Infliction of Emotional Distress.

2. Defendants have harassed Plaintiff by repeatedly publishing Plaintiff's personal cell phone number to customers to book reservations and make food orders, and posting Plaintiff's phone number publicly online.

1

## JURISDICTION AND VENUE

3.  This Court has jurisdiction to grant the relief sought by Plaintiff under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and complete diversity of citizenship exists.

4.  Plaintiff is a citizen who resides in Wentzville, Missouri.

5.  Defendant Midfield is a corporation that exists under the laws of the State of Michigan.

6.  Defendant SSP is a corporation existing under the laws of the State of Virginia.

7.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise to this action occurred in this District and Defendants transact significant business in this District.

## PARTIES

8.  Plaintiff David Olson ("Plaintiff") is a natural person, and at all times mentioned herein is a resident of the City of Wentzville, County of Saint Charles, State of Missouri.

9.  Defendant Midfield is a limited liability company, is authorized to do business in the State of Missouri, and has a principal executive office located at 6810 Metroplex Dr., Suite 100, Romulus, MI 48174. Defendant Midfield's agent of service is Andrea Hachem at 2415 Island View Dr., West Bloomfield, MI 48324.

10. Defendant SSP is a division of SSP Group and has a principal executive office located at 20408 Bashan Dr., Suite 300, Ashburn, VA 20147.  Defendant SSP's

agent of service is C T Corporation System at 4701 Cox Rd., Suite 285, Glen Allen, VA 23060.

## FACTUAL BACKGROUND

11.  Between January 2017 and February 2018, Plaintiff worked as the Area Manager of Food Truck Alley located in Terminal 1 of Minneapolis-St. Paul International Airport ("MSP").

12.  At the time of Plaintiff's employment, Food Truck Alley was operated by Defendant Midfield. On or around May 4th, 2023, Defendant Midfield was acquired by Defendant SSP. Food Truck Alley is now seemingly under the purview of Defendant SSP.

13.  During the time of Plaintiff's employment, Food Truck Alley consisted of three restaurants: Holy Land Deli, Red Cow, and Salty Tart.

14.  Shortly after Plaintiff ended his employment with Food Truck Alley in February 2018, he began to receive numerous calls on his personal cell phone at all hours of the day and night.

15.  Plaintiff soon started to realize that the calls were coming from Food Truck Alley customers looking to order food, make reservations, or confirm Food Truck Alley's restaurant hours.

16.  At this point, Plaintiff discovered that his personal cell phone number was listed on the Google Business profile for both the Holy Land and Red Cow restaurants located within Food Truck Alley.

17.    Plaintiff immediately submitted an edit request through the Google Business profile, but Plaintiff's cell phone number remained posted online as the business phone number available to customers.

18.    In February 2023, Plaintiff contacted Noureddine "Dean" Hachem ("D. Hachem"), Defendant Midfield's President, to discuss getting the problem remedied, but Hachem was unable to complete the request. Plaintiff was not made aware of any action taken by Dean Hachem.

19.    Plaintiff continued to reach out to different people to remedy the situation, as it was causing distress and disturbing his sleep, daily life, and peacefulness.

20.    On September 18th, 2023, Plaintiff contacted Anne Saxton ("Ms. Saxton"), Director of Strategic Partnerships and Business Development with MSP.

21.    Saxton reported that the airport has no jurisdiction over the concessions stands and instead stated that the operator of the business controlled the Google Business listing, therefore, Ms. Saxton emailed both Nader Hachem ("N. Hachem"), Defendant Midfield's Vice President and Kyle Phillips ("Mr. Phillips"), Defendant SSP's Vice President of Concepts and Development to ask for them to complete Plaintiff's request of changing the Google Business listing and removing Plaintiff's phone number.

22.    N. Hachem responded to the email on September 18th, stating: *"Amal, who runs all the Google pages, has once again requested access to change this number."*

23.    Amal Hachem ("A. Hachem"), Director of Administration with Defendant Midfield, reached out to Google Business and was told to expect a response from

4

them by September 21ˢᵗ, 2023. N. Hachem emailed A. Hachem on September 25ᵗʰ, 2023, to request an update on the situation, and A. Hachem did not respond.

24.    A. Hachem reports that she had requested access to change the account several times. A. Hachem never followed up to inform Plaintiff of the results of her inquiry, nor was any change ever made.

25.    At the same time, Plaintiff continued to receive copious numbers of calls about the restaurant's hours of operations and the possibility of ordering food.

26.    On September 27ᵗʰ, 2023, N. Hachem emailed Plaintiff and said, *"You're all set, sorry for the inconvenience. Have a great day!"*

27.    Plaintiff continues to receive calls that were meant for the restaurant.

28.    On December 4th, 2023, Plaintiff received four calls. Plaintiff reports receiving calls between 4:37 a.m. and 10:30 p.m. from customers seeking information about MSP restaurants.

29.    On December 4ᵗʰ, 2023, Plaintiff contacts both N. Hachem and Ms. Saxton again. The issue is not resolved.

30.    In February 2024, Plaintiff contacted the owner of Holy Land, Majdi Wahde ("Wahde"). Both Plaintiff and Wahde submitted requests to edit the Google Business listing, which appeared to fix the problem and remove Plaintiff's personal cell phone number from the Google Business listing.

31.    After receiving more calls, on June 4ᵗʰ, 2024, Plaintiff checked the Google Business listing to find his personal phone number once again posted, and that the Google Business listing was updated two weeks prior.

32.     Plaintiff contacted Ms. Saxton again on June 4th, 2024, to ask for help in changing the listing, to which she responded that she is unable to do so and instead reached out to N. Hachem and Mr. Phillips.

33.     Mr. Phillips responded to the email from Ms. Saxton stating that he was unable to change the phone number because he was not the one to set up the business profile, and he does not have access to the account.

34.     N. Hachem responded to the email from Ms. Saxton and stated, *"I haven't had access to this in a while. I tried helping previously but obviously it keeps going back to [Plaintiff's] number somehow, which makes no sense. If the number is switched, someone has to be switching it back to [Plaintiff's] number."*

35.     As of December 5th, 2025, Plaintiff's phone number is still listed on the Google Business profile for both Holy Land and Red Cow at Food Truck Alley in MSP.

36.     Despite notifying numerous people about the situation, dedicating hours to ameliorating the problem, and requesting that the erroneous phone number be corrected, Defendants were unwilling or unable to protect Plaintiff's privacy or appropriately address the situation.

37.     Plaintiff has endured hardships at the new workplace because of the invasive, continuous, and disruptive phone calls.

38.     Plaintiff has held this personal phone number since the 1990s, and the idea of being forced to abandon the phone number because of the wrongdoing of other people is distressing to Plaintiff.

6

39.    Because of the massive amount of phone calls, Plaintiff has experienced out-of-pocket loss, emotional distress, mental anguish, loss of sleep, headaches, nausea, and hopelessness.

**JURY DEMAND**

40.    Plaintiff hereby demands a trial by jury on all issues so triable.

**CAUSES OF ACTION**

**COUNT I: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

41.    Plaintiff incorporates all other allegations as if set forth herein in full.

42.    Under Missouri law, to state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress, and (4) the distress was severe.

43.    Defendants have intentionally circulated Plaintiff's personal cell phone number on public channels, causing hundreds, if not thousands, of restaurant customers to contact Plaintiff directly over seven years.

44.    Defendants' outrageous conduct of inputting a personal cell phone number into a public business profile that handles dozens of calls daily was outrageous and caused Plaintiff to have increased levels of stress and anxiety.

45.    Defendants' deliberate inputting of Plaintiff's cell phone number into the call centers was reckless and intentional, and Defendants knew or should have known that the calls at all hours of the day and night to Plaintiff's personal cell phone would likely result in severe emotional distress. Defendants were also unwilling or unable

to dedicate appropriate time and energy to ameliorating the situation that was causing Plaintiff significant distress.

46.    As a result of Defendants' intrusion, Plaintiff has suffered headaches, loss of sleep, nausea, depression, anxiety, fear, hopelessness, emotional distress, and out-of-pocket loss and is entitled to an award of actual damages in an amount to be determined at trial.

## COUNT II: INVASION OF PRIVACY

47.    Plaintiff incorporates all other allegations as if set forth herein in full.

48.    Defendants intentionally intruded upon Plaintiff's solitude, seclusion, and private concerns and affairs throughout their illegal telephone campaign, whereby they or their customers placed telephone calls even after Plaintiff had settled with Defendants, wherein Defendants were given explicit instructions and warnings to cease all calls.

49.    Defendants' intrusion was substantial, highly offensive to Plaintiff, and would be highly offensive and objectionable to any reasonable person in Plaintiff's position.

50.    Plaintiff had a legitimate expectation of privacy in his solitude, seclusion, and private concerns and affairs.

51.    As a result of Defendants' intrusion, Plaintiff has suffered migraine headaches, loss of sleep, nausea, depression, anxiety, fear, hopelessness, emotional distress, and out-of-pocket loss and is entitled to an award of actual damages in an amount to be determined at trial.

## COUNT III – NEGLIGENCE

52.    Plaintiff realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

53.    At all relevant times, Defendant Midfield owned, operated, or controlled Food Truck Alley located in Terminal 1 of MSP.

54.    On or about May 4, 2023, Defendant SSP acquired Defendant Midfield and assumed control, operation, or oversight of Food Truck Alley and its associated business listings, including the Google Business profiles for the restaurants located therein.

55.    During Plaintiff's employment between January 2017 and February 2018 as Area Manager of Food Truck Alley, Plaintiff provided his personal cell phone number to Defendants and/or their agents for legitimate business purposes.

56.    After Plaintiff's employment ended in February 2018, Defendants and/or their agents negligently published, maintained, or failed to remove Plaintiff's personal cell phone number from the public Google Business listings for Holy Land Deli and Red Cow, both restaurants located within Food Truck Alley.

57.    As a direct result, members of the public continued to contact Plaintiff on his personal cell phone, believing they were calling Food Truck Alley or its restaurants to place orders, make inquiries, or confirm operating hours.

58.    Despite repeated notifications from Plaintiff beginning as early as February 2018 and continuing through October 2025, Defendants negligently failed to take adequate steps to investigate, correct, or prevent the continued publication of Plaintiff's personal phone number on these business listings.

59. Defendants owed Plaintiff a duty of reasonable care to safeguard his personal information, to ensure that business contact information did not include his private cell number, and to promptly correct any publicly accessible misinformation that caused foreseeable harm.

60. Defendants breached that duty by:

a. Failing to remove Plaintiff's personal phone number from the Google Business listings after being notified numerous times;

b. Failing to communicate effectively with Google or to delegate the responsibility to personnel capable of making the correction;

c. Failing to supervise or manage the transfer of business account control following the May 2023 acquisition by Defendant SSP; and

d. Allowing the error to persist for years despite repeated assurances that it had been corrected.

61. Defendants' negligence was the direct and proximate cause of Plaintiff's injuries, including but not limited to:

- Loss of privacy;

- Invasion of solitude and disruption of daily life;

- Emotional distress, mental anguish, and loss of sleep;

- Headaches, nausea, and other physical manifestations of stress;

- Lost productivity and out-of-pocket expenses incurred in attempting to resolve the issue; and

- Distress arising from the prospect of having to abandon a long-held personal phone number.

62.    Defendants' conduct demonstrated a reckless disregard for Plaintiff's rights and well-being by allowing the situation to persist for over seven years despite repeated notice and opportunity to correct it.

63.    As a direct and proximate result of Defendants' negligence, Plaintiff has suffered damages in an amount to be determined at trial.

## RELIEF REQUESTED

Plaintiff requests an Order for the following relief:

- For an award of actual damages for Plaintiff's emotional distress;
- For an award of actual and punitive damages caused by Defendants' illegal intrusion upon Plaintiff's seclusion;
- Compensatory damages in an amount to be determined at trial, sufficient to fully and fairly compensate Plaintiff for all injuries and losses proximately caused by Defendants' negligence, including but not limited to emotional distress, mental anguish, loss of sleep, invasion of privacy, physical symptoms, and disruption of daily life;
- Special and consequential damages, including out-of-pocket expenses and other financial losses sustained as a result of Defendants' conduct; and
- All other relief the Court deems just and equitable.

Dated this 5th day of December 2025.

Respectfully submitted,


By:/*s/Kaitlin Carpenter*
Kaitlin Carpenter, Esq.
Attorney I.D. #: 74599
**ONDERLAW, LLC**
110 East Lockwoon
Saint Louis, MO 63119
Telephone: 314-963-9000
carpenter@onderlaw.com

Thomas J. Lyons, Jr., Esq.
Attorney I.D. #: 249646
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone:  (651) 770-9707
Facsimile:   (651) 704-0907
tommy@consumerjusticecenter.com
*(To Be Admitted Pro Hac Vice)*

***ATTORNEYS FOR PLAINTIFF***

## VERIFICATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, David Olson, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys, and I believe that all the facts contained in it are actual, to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3. I believe that this civil Complaint is well-grounded in fact and warranted by existing law or by a good-faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated this 31st day of October 2025.

s/ _____
David Olson